[Cite as *Day v. Rochling-Glastic Composites, L.P.*, 2020-Ohio-1027.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DE'CARLA D. DAY,                          :

    Plaintiff-Appellee,              :

                                           No. 108532

    v.                                        :

ROCHLING-GLASTIC                          :
COMPOSITES, L.P., ET AL.

                                           :

    Defendant-Appellant.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 19, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-874086

---

### *Appearances:*

Nurenberg, Paris, Heller & McCarthy, Co., L.P.A., and
Benjamin P. Wiborg, Jeffrey Michael Heller, and Brenda
M. Johnson, *for appellee.*

Lopresti, Marcovy & Marotta, L.L.P., and Salvatore J.
Lopresti and Timothy A. Marcovy, *for appellant.*

EILEEN T. GALLAGHER, A.J.:

{¶ 1} Defendant-appellant, Rochling-Glastic Composites, L.P. ("Glastic"),
appeals from judgments denying a motion for directed verdict and a motion for
judgment notwithstanding the verdict ("JNOV"). Glastic claims two errors:

1. The trial court erred, to the prejudice of the defendant-appellant, Rochling-Glastic, when it overruled and denied its motion and renewed motion for directed verdict.

2. The trial court erred to the prejudice of defendant-appellant, Rochling-Glastic, when it overruled and denied its motion for judgment notwithstanding the verdict.

{¶ 2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Plaintiff-appellee, De'Carla Day ("Day"), began working for Glastic in 1997, and worked in different positions over the years. In 2006, Day was assigned to work as a press operator on a full-time basis in the protrusion department. (Trial tr. 11.) Day's job required her to keep the presses supplied with three forms of raw materials: sheets of fiberglass matting, spools of fiberglass fibers known as "rovings," and liquid resin. Rovings are spools of fiber material weighing between 42 and 50 pounds, depending on the end product, and resin is a thick liquid that comes in 55-gallon drums. Day manually replaced these materials numerous times each day.

{¶ 4} Each press has five to six shelves for rovings. To replace a roving, Day had to reach over her head and "launch" it onto the shelf. She often scooped resin from two 55-gallon drums per day at one gallon per scoop. One bucket of resin generally weighs 12 pounds, but it could weigh more if the bucket is dirty. Day often scooped resin 110 times per shift, and sometimes more often, if she was running multiple presses at once.

{¶ 5} Day started to experience shoulder pain sometime before May 30, 2014, and treated it with over-the-counter medications. However, on May 30, 2014, Day experienced a sharp pain in her shoulder while she was scooping resin during the early part of her shift. The pain was severe and prompted her go to the Euclid Hospital emergency room. After being treated at Euclid Hospital, Day followed up with Dr. Catherine Watkins-Campbell ("Dr. Watkins-Campbell"), a medical doctor board certified in occupational medicine and family medicine.

{¶ 6} Day filed a claim for her shoulder injury with the Bureau of Workers' Compensation, and the claim was approved for a right shoulder sprain/strain. She later filed an application to have the claim expanded to include subacromial impingement of the right shoulder, a partial thickness tear of the suprasinatus tendon of the right shoulder, and a superior labral anterior posterior lesion with paralabral cyst of the right shoulder. She claimed these conditions were a direct and proximate result of the performance of her work-related duties at Glastic. The Industrial Commission of Ohio denied the additional claims, and Day appealed to the Cuyahoga County Court of Common Pleas.

{¶ 7} Day's appeal went to trial in January 2018. Day testified about the nature of her work, and her treating physician, Dr. Watkins-Campbell, offered expert testimony regarding the proximate cause of Day's shoulder conditions. After Day rested her case, Glastic made an oral motion for directed verdict pursuant to Civ.R. 50, which was denied. Glastic renewed its Civ.R. 50 motion for directed verdict before the case went to the jury, and it was again denied. After due

deliberation, the jury found that Day was entitled to participate in the workers' compensation fund for two of the three claimed conditions (1) the partial thickness tear of the supraspinatus tendon in her right shoulder, and (2) the superior labral anterior posterior lesion with paralabral cyst of her right shoulder.

{¶ 8} The jury also responded to interrogatories aimed at determining whether Day's conditions were proximately caused by an acute work-related incident, by repetitive motions Day performed at work over a period of time, or whether they were the result of a natural degenerative process unrelated to Day's employment. In response to the interrogatories, the jury found, among other things, that Day's partial thickness tear of the supraspinatus tendon of the right shoulder and her superior labral anterior posterior lesion with paralabral cyst of the right shoulder were "directly and proximately caused by a repetitive motion injury over a definite time span at her employment with Rochling-Glastic Composites, L.P." and "[were] not primarily caused by natural deterioration of that part of her body." (Jury interrogatories Nos. 4 and 6.)

{¶ 9} Glastic filed a timely motion for JNOV pursuant to Civ.R. 50(B), which was denied. Glastic now appeals the denial of its motions for directed verdict and for JNOV.

## II. Law and Analysis

{¶ 10} In the first assignment of error, Glastic argues the trial court erred in denying its motions for directed verdict. In the second assignment of error, Glastic argues the trial court erred in denying its motion for JNOV. We discuss these

assigned errors together because they involve the same standard for reviewing the evidence.

## A. Standard of Review

{¶ 11} A motion for directed verdict under Civ.R. 50 tests the sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. *Wagner v. Roche Laboratories*, 77 Ohio St.3d 116, 119, 671 N.E.2d 252 (1996). Under Civ.R. 50(A)(4), a court may properly grant a motion for directed verdict when, after construing the evidence most strongly in favor of the party against whom the motion is directed, it finds that reasonable minds could come to but one conclusion on a determinative issue, and the conclusion is adverse to the nonmoving party.

{¶ 12} In evaluating the denial of a Civ.R. 50(B) motion for JNOV, a reviewing court applies the same test as that applied in reviewing a motion for a directed verdict. *Kanjuka v. MetroHealth Med. Ctr.,* 151 Ohio App.3d 183, 2002-Ohio-6803, 783 N.E.2d 920, ¶ 14 (8th Dist.), citing *Grau v. Kleinschmidt*, 31 Ohio St.3d 84, 90, 509 N.E.2d 399 (1987). In reviewing a judgment on a motion JNOV,

> [t]he evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied.

*Posin v. ABC Motor Court Hotel*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976). As with motions for directed verdict, the trial court does not consider either the weight

of the evidence or the credibility of the witnesses when ruling on a motion for JNOV. *Id.*

{¶ 13} Because both motions for directed verdict and JNOV test the legal sufficiency of the evidence, we review them de novo, with no deference to the court's decision. *Oster v. Lorain*, 28 Ohio St.3d 345, 347, 504 N.E.2d 19 (1986) (JNOV); *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 4 (directed verdict).

### B. Evidence of Repetitive Motion Injury

{¶ 14} Workers' compensation statutes must be liberally construed in favor of the employee. R.C. 4123.95. R.C. 4123.01(C) defines "injury" for purposes of workers' compensation as "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C)(2) further provides that the term "injury" for purposes of workers' compensation does not include "[i]njury or disability caused primarily by the natural deterioration of tissue, an organ, or part of the body[.]" Nevertheless, the Ohio Supreme Court has held that "an injury which develops over time as the result of the performance of the injured worker's job-related duties is compensable under R.C. 4123.01(C)." *Village v. Gen. Motors Corp.*, 15 Ohio St.3d 129, 472 N.E.2d 1079 (1984). Thus, the trier of fact must "distinguish between a gradual work-related condition and one that is the consequence of natural aging." *Id.* at 135 (Holmes, J., concurring.).

{¶ 15} To prevail on a workers' compensation claim, the plaintiff must prove, by a preponderance of the evidence, that his or her injury occurred "in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). In cases involving alleged repetitive motion injuries, the plaintiff must produce expert testimony establishing that his or her injury was directly and proximately caused by repetitive motions performed during the course of the plaintiff's work-related duties. *Walker v. Ford Motor Co.,* 8th Dist. Cuyahoga No. 100759, 2014-Ohio-4208, ¶ 21 (Expert medical testimony is necessary to establish the proximate cause of work-related injury.). The plaintiff must also present evidence demonstrating a causal connection between the injury and work-related duties taking place over a discernible period of time. *Miller v. Emery Oil Co.*, 80 Ohio App.3d 693, 696, 610 N.E.2d 574 (12th Dist.1992); *Williams v. LTV Steel Co.*, 8th Dist. Cuyahoga No. 54947, 1989 Ohio App. LEXIS 285 * 8-9 (Jan. 26, 1989).

{¶ 16} Glastic contends Day failed to present medical testimony establishing that her shoulder conditions were directly and proximately caused by repetitive motions she performed at work. However, Dr. Watkins-Campbell testified to the repetitive nature of Day's work duties, stating, in relevant part:

> And she explained to me that she had to repeatedly use a ten-pound bucket, that she dipped into different resins over and over again into what process she was involved in. She also had to lift, occasionally and periodically, as much as 42 pounds, I think more in a direct lift.

(Watkins-Campbell trial depo tr. 12-13.) With respect to causation, Dr. Watkins-Campbell stated:

It's my opinion, based on my understanding of pathology, anatomy and causality and treatment of shoulders over 30 years, that in this case her work activities caused the twofold issue here. One was a chronic cumulative trauma pathology from repetition. And on the day of the injury, a more definitive acute event that was the straw that broke the camel's back.

(Watkins-Campbell trial depo tr. 21-22.) Indeed, Dr. Watkins-Campbell excluded the possibility that anything other than Day's performance of repetitive work activities caused her injury. When asked whether Dr. Watkins-Campbell found any evidence in speaking with Day or in reviewing her medical records to suggest that some activity other than her work-related duties caused her shoulder injuries, she replied: "No. Not to my knowledge." (Watkins-Campbell trial depo tr. 22.) In other words, Dr. Watkins-Campbell testified that Day's injuries were solely caused by Day's workplace activities.

{¶ 17} Dr. Watkins-Campbell also rejected the possibility that Day's injuries could be attributed to natural deterioration as opposed to her repetitive work activities. On direct examination, she was asked to describe different causes of joint inflammation and arthritis and whether Day's injuries could be attributed to those causes. She testified:

A: Arthritis is the inflammation of the joint. What is the cause of the inflammation of that joint? People with rheumatoid arthritis make antibodies that attack their joints. People with Lupus do the same thing and whole other connective tissue disorder. Then there's something we call osteoarthritis, often used sometimes with degenerative, in that physical use of a joint over time will cause wear and tear in the joint and inflammation of that joint.

* * *

Q: And just to be clear, so in De'Carla's situation, her employment, in the repetitive movents [sic] is what would cause her arthritis?

* * *

A: Yes.

(Watkins-Campbell trial depo tr. 24-25.) It is undisputed that Dr. Watkins-Campbell was qualified to testify as a medical expert in this case. Therefore, there was competent, credible evidence proving that Day's shoulder conditions were proximately caused by the repetitive movements she made during the course of employment at Glastic.

{¶ 18} Furthermore, there was expert testimony showing that Day's work-related injuries developed within a discernible period of time. What constitutes a "discernible period of time" has not been defined by statute or case law as referring to any specific period to time. In *Village*, 15 Ohio St.3d 129, 472 N.E.2d 1079 (1984), Justice Holmes noted in his concurring opinion that "[t]he accrual of the disability must relate to a discernible time which is reasonably definite and not remote." *Id.* at 135 (Holmes, J., concurring.) In *Miller*, 80 Ohio App.3d 693, 610 N.E.2d 574 (12th Dist.1992), the court concluded that the plaintiff failed to prove that her claimed injury was caused or aggravated over an ascertainable period of time because there was no evidence demonstrating that the injury "was either caused or aggravated over the course of one day, her ten years as secretary, or her eighteen total years of employment at Emery Oil." *Id.* at 696. Although the work-related injury at issue in *Village* developed during a five-day period, the cases do not require

the plaintiff to prove that the progressive work-related injury occurred within a specific number of days or weeks; the cases require the plaintiff to prove that the injury occurred recently during a relatively narrow time frame.

{¶ 19} Dr. Watkins-Campbell testified that Day did not have chronic right shoulder problems over an extended period of time and that her conditions developed "progressively" over a period of weeks or months. (Dr. Watkins-Campbell trial depo tr. 37-39.) Dr. Watkins-Campbell testified, in relevant part:

> Q: * * * At one point you are saying that she had been having a problem and getting progressively worse. And then she denies chronic right-shoulder pain.
>
> Isn't chronic pain, pain that exists over a period of time? Acute is sudden onset and chronic is over a period of time?
>
> A: When I ask that question, I'm looking to see whether she's had previous other injuries of significance. Whether she's been treated for similar symptoms off-and-on in the past. And I go through that on a regular basis when I'm trying to determine what the cause of problem is.
>
> So I can say that I asked her enough questions that in a period of time, maybe weeks, months prior to the date of injury, she was having progressive symptoms. And on the date of injury, they became intolerable enough that she went to the emergency room.

(Dr. Watkins-Campbell trial depo tr. 37-39.) Although there was no evidence as to a specific number of days or weeks during which Day's shoulder pain developed, the evidence was clear that her shoulder injuries were a recent development rather than a long-standing chronic condition of unspecified duration. There was evidence that Day's shoulder condition developed during a limited period of time shortly before May 30, 2014, the day the pain became intolerable. Therefore, there was sufficient

evidence establishing that Day's shoulder conditions were directly and proximately caused by repetitive work activities performed within a repetitive and discernible period of time.

{¶ 20} The first and second assignments of error are overruled.

{¶ 21} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

LARRY A. JONES, SR., J., and
KATHLEEN ANN KEOUGH, J., CONCUR